UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERALD J. KLEIN, on behalf of himself and all similarly situated<br><br>        Plaintiff,<br><br>      v.<br><br>TD AMERITRADE HOLDING CORPORATION, TD AMERITRADE, INC. AND FREDRIC TOMCZYK<br><br>        Defendants. | Civil Action No. 14-cv-05738<br><br>MOTION DATE:  December 1, 2014 |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SECTION 1404 MOTION TO TRANSFER

ROBINSON, WETTRE & MILLER LLC
One Newark Center, 19th Floor
Newark, New Jersey 07102
973-690-5400

*Of counsel*:

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300

*Attorneys for Defendants*
*TD Ameritrade Holding Corporation*,
*TD Ameritrade, Inc.*, *and*
*Fredric Tomczyk*

## **TABLE OF CONTENTS**

                                                                                                        **Page**

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

I.       TD Ameritrade's Alleged Conduct ................................................................................ 2

II.     The Related Nebraska Actions ....................................................................................... 3

III.    The Location of Defendants and Relevant Evidence .................................................... 5

ARGUMENT ............................................................................................................................... 5

I.       This Case Could Have Been Brought in Nebraska. ..................................................... 7

II.     The Private and Public Interest Factors Strongly Favor Transferring This Case to
the District of Nebraska. ................................................................................................ 8

          A.       Practical Considerations – Avoidance of Duplicative Litigation. ..................... 8

          B.       Convenience of the Parties. .............................................................................. 10

          C.       Convenience of Witnesses. .............................................................................. 11

          D.       Plaintiff's Choice of Forum. ............................................................................ 12

          E.       Nebraska Has a Stronger Connection To the Alleged Conduct and a
Greater Interest in the Litigation. ..................................................................... 13

          F.       The District of Nebraska's Docket is Much Less Congested Than the
District of New Jersey's Docket. ..................................................................... 13

CONCLUSION .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bryan v. Bristol-Myers Squibb Co.*,
  No. 12-6584, 2013 WL 3288159 (D.N.J. June 28, 2013)..........................................................6

*Clark v. Burger King Corp.*,
  255 F. Supp. 2d 334 (D.N.J. 2003) ........................................................................................12

*Continental Grain Co. v. The FBL-585*,
  364 U.S. 19 (1960)....................................................................................................................8

*Culp v. NFL Productions,*LLC,
  No. 13-7815, 2014 WL 4828189 (D.N.J. Sept. 29, 2014) ..................................................8, 12

*In re Amendt*,
  169 Fed. App'x 93 (3d Cir. Feb. 16, 2006)...............................................................................8

*Jermax, Inc. v. AK Steel Corp.*,
  No. 09-cv-4438, 2010 WL 2652276 (D.N.J. June 24, 2010)................................................. 8-9

*Job Haines Home for the Aged v. Young*,
  936 F. Supp. 223 (D.N.J. 1996) ......................................................................10, 11, 12, 13, 14

*Jumara v. State Farm Ins. Co.*
  55 F.3d 873 (3d Cir. 1995).....................................................................................................5, 6

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947)................................................................................................................10

*Liggett Group Inc. v. R.J. Reynolds Tobacco, Co.*,
  102 F. Supp. 2d 518 (D.N.J. 2000) ................................................................................... 6-7, 13

*Mancini v. Benihana*,
  No. 13-03167, 2013 WL 6147808 (D.N.J. Nov. 22, 2013) ..............................................11, 12

*Medtox Scientific, Inc. v. Morgan Capital, LLC*,
  258 F.3d 763 (8th Cir. 2001) ....................................................................................................7

*ML Design Group, LLC v. Young Mfg. Co.*,
  No. 12-5882, 2013 WL 3049174 (D.N.J. June 17, 2013)............................................6, 10, 13

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D.N.J. 1993) .....................................................................................8, 9, 10

*Santi v. Nat'l Business Records Mgmt.*,
  722 F. Supp. 2d 602 (D.N.J. 2010) .........................................................................................12

*Todd Shipyards Corp. v. Cunard Line Ltd.*,
   708 F. Supp. 1440 (D.N.J. 1989) ........................................................................................11

*Yang v. Odom*,
   409 F. Supp. 2d 599 (D.N.J. 2006) ...............................................................................10, 12

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. § 1391 ..............................................................................................................................7

28 U.S.C. § 1404(a) ...................................................................................................................1, 5

15 U.S.C. § 78aa .............................................................................................................................7

Payment For Order Flow, Exchange Act Release No. 34-34902, 59 Fed. Reg. 55006-01,
   55007 (Nov. 2, 1994) ..........................................................................................................2

Fed. R. Civ. P. 45(c)(1)(A) ...........................................................................................................11

Pursuant to 28 U.S.C. § 1404(a), Defendants TD Ameritrade Holding Corporation ("TD Ameritrade Holding"), TD Ameritrade, Inc. (together with TD Ameritrade Holding, "TD Ameritrade") and Fredric Tomczyk (together with TD Ameritrade, "Defendants") respectfully submit this Memorandum of Law in Support of Their Section 1404 Motion to Transfer this action (the "Action") to the United States District Court for the District of Nebraska.

## INTRODUCTION

TD Ameritrade is a Nebraska-based retail broker-dealer that provides financial services, including acting as a broker for its customers' securities orders by routing them to exchanges and other market centers for execution.  Plaintiff Gerald J. Klein ("Plaintiff"), a customer of TD Ameritrade, filed the complaint ("Complaint") on behalf of himself and a putative class of TD Ameritrade customers concerning TD Ameritrade's routing of stock orders.  Plaintiff alleges that TD Ameritrade violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5 promulgated thereunder, by not properly disclosing that TD Ameritrade supposedly did not route orders in a manner that obtained "best execution," but instead did so in a manner focused solely on the receipt of "payment for order flow" and "liquidity rebates."  Plaintiff additionally alleges that Mr. Tomczyk, as the Chief Executive Officer of TD Ameritrade, violated Section 20(a) of the Exchange Act as a control person of TD Ameritrade.  Plaintiff also claims that TD Ameritrade's order routing decisions breached fiduciary duties and those of Mr. Tomczyk.

Plaintiff filed this Action in New Jersey, but in the interest of justice and for the convenience of the parties and witnesses, this Action should be transferred to the District of Nebraska.  Not only is TD Ameritrade headquartered in Nebraska, but four other putative class actions against TD Ameritrade are currently pending in the District of Nebraska, each making allegations that are substantially similar to those Plaintiff asserts concerning TD Ameritrade's

order routing processes and best execution obligations. Moreover, most of the conduct alleged occurred in Nebraska or closer to Nebraska than to this District, and the vast majority of the potential significant witnesses are likewise based in Nebraska or closer to Nebraska.

Courts transfer actions when the relevant factors strongly favor doing so, and the foregoing factors, together with the others described below, strongly favor transferring this Action to Nebraska.

## FACTUAL BACKGROUND

### I. TD AMERITRADE'S ALLEGED CONDUCT

Plaintiff's allegations concern TD Ameritrade's order routing to market venues, whether TD Ameritrade satisfied its best execution obligations, and its public statements with respect to those issues. *See*, *e.g.*, Compl. ¶¶ 3-5, 8-10, 82.[1] TD Ameritrade does not execute customer orders; rather, upon receipt of customer orders, TD Ameritrade routes them to external venues for execution. *Id.* ¶ 7. In return for routing certain customer orders, TD Ameritrade receives payment or liquidity rebates from venues for its order flow. *See*, *e.g.*, *id.* ¶¶ 27-28. Such payments are expressly permitted by the Securities and Exchange Commission ("SEC"). *See*, *e.g.*, Payment For Order Flow, Exchange Act Release No. 34-34902, 59 Fed. Reg. 55006-01, 55007 (Nov. 2, 1994) ("payment for order flow may result in lower execution costs, facilitate technological advances in retail customer order handling practices and facilitate competition among broker-dealers and securities markets").

---

[1] TD Ameritrade and Mr. Tomczyk intend to move to dismiss the Complaint in accordance with the consent scheduling order (*see* Dkt. 8), and do not waive any of their rights or defenses or otherwise concede the accuracy of any of the allegations asserted in the Complaint (and the same holds with respect to each of the four Nebraska Actions, discussed below). Likewise, defendants intend to move to dismiss the Nebraska Actions.

2

Plaintiff alleges that retail broker-dealers have a fiduciary obligation to obtain best execution on customer orders and that TD Ameritrade is therefore required to "execute orders in a manner that is most beneficial to their clients" and to "fill the clients' orders to the extent possible at the best price available." Compl. ¶ 5. Plaintiff also asserts that TD Ameritrade and Mr. Tomczyk breached fiduciary duties because TD Ameritrade does not obtain best execution for its clients, but instead routes client orders based solely on the market center that will provide the highest payment to TD Ameritrade. *See, e.g.*, *id.* ¶¶ 8-9. Plaintiff further alleges that, by engaging in this conduct, TD Ameritrade made material misrepresentations about its order routing processes and that TD Ameritrade's senior managers engaged in a scheme to defraud Plaintiff and the putative class in violation of the federal securities laws. *See id.* ¶¶ 82-83. Plaintiff additionally alleges that Mr. Tomczyk is liable under the federal securities laws as a control person, based on a theory of derivative liability for TD Ameritrade's alleged securities law violations. *See id.* ¶¶ 91-93.

Plaintiff makes a bald assertion that "[m]any of the acts alleged herein, including the dissemination to the investing public of the misleading statements and omissions at issue, occurred in substantial part in this District." Compl. ¶ 14. Plaintiff also asserts, however, that TD Ameritrade has its principal place of business in Nebraska. *Id.* ¶¶ 17-18

## II. THE RELATED NEBRASKA ACTIONS

Before this action was filed on September 15, 2014, another putative class action was filed in Nebraska state court on August 21, 2014, asserting substantially similar allegations regarding TD Ameritrade's order routing practices and its supposed failure to obtain best execution. That action was subsequently removed to the District of Nebraska, and since then, three more putative class actions have been filed in the District of Nebraska (collectively, the "Nebraska Actions") that also assert substantially similar allegations to those alleged by Plaintiff but with various

3

theories of liability. *See generally* the accompanying Declaration of Donald A. Robinson ("Robinson Decl.") Ex. A (*Zola v. TD Ameritrade* complaint); Ex. B (*Verdieck v. TD Ameritrade* complaint); Ex. C (*Lerner v. TD Ameritrade* complaint); and Ex. D (*Sarbacker v. TD Ameritrade* complaint).

The four Nebraska Actions, all of which are pending before the Honorable Joseph F. Bataillon in Omaha, make a number of assertions that arise out of the same core allegations asserted in this Action. In brief, those allegations are as follows.

In *Zola v. TD Ameritrade, Inc., et al.* ("*Zola*"), the plaintiffs allege that TD Ameritrade, Inc. and TD Ameritrade Clearing, Inc. breached a client agreement by allegedly failing to obtain best execution because instead they supposedly routed customer orders solely on the basis of payment for order flow. *See* Robinson Decl. Ex. A ¶¶ 24, 33, 35-36.

In *Verdieck v. TD Ameritrade, Inc.* ("*Verdieck*"), the plaintiff alleges that TD Ameritrade breached fiduciary duties and the duty of best execution by routing non-marketable limit orders to a particular market venue in exchange for liquidity rebates. *See id.* Ex. B ¶¶ 1-2, 36, 56-57.

Similarly, the *Lerner v. TD Ameritrade, Inc.* ("*Lerner*") action alleges that TD Ameritrade improperly routed non-marketable limit orders to trading venues solely on the basis of whether TD Ameritrade would receive liquidity rebates. *See id.* Ex. C ¶¶ 48-49. The *Lerner* complaint asserts claims for breach of fiduciary duty for failure to obtain best execution, unjust enrichment, declaratory judgment, and violation of Nebraska's Consumer Protection Act. *See id.* Ex. C ¶¶ 46-65.

And in *Sarbacker v. TD Ameritrade Holding Corporation, et al.* ("*Sarbacker*"), the plaintiff alleges that TD Ameritrade failed to provide its customers with best execution and instead routed customer orders to the trading venue that offered TD Ameritrade the largest

payments for its orders. *See id.* Ex. D ¶¶ 42, 48, 70. The *Sarbacker* complaint, like the Complaint here, alleges fraud, in addition to other claims. *See id.* Ex. D ¶¶ 84-113.

### III. THE LOCATION OF DEFENDANTS AND RELEVANT EVIDENCE

The alleged conduct regarding order routing and best execution at the core of Plaintiff's Complaint did not occur in New Jersey, but rather in Nebraska or in locations much closer to Nebraska than to New Jersey. Defendants TD Ameritrade Holding and TD Ameritrade, Inc. are Nebraska-based companies with their principal places of business in Omaha, Nebraska. Compl. ¶¶ 17-18; *accord* accompanying Declaration of Felix B. Davidson ("Davidson Decl.") ¶ 5. Likewise, nearly all of the potentially significant witnesses involved in TD Ameritrade's decisions regarding its order routing are based in Nebraska (Omaha), Illinois (Chicago) or Texas (Fort Worth). *See* Davidson Decl. ¶ 7. Moreover, while Plaintiff makes the bare allegation that the dissemination of alleged misstatements to the investing public occurred in substantial part in New Jersey (Compl. ¶ 14), the TD Ameritrade 10-K and SEC Rule 606 Reports identified in the Complaint (*id.* ¶¶ 34, 43, 47) were prepared primarily in Omaha, and they were electronically disseminated from either Omaha or Fort Worth. *See* Davidson Decl. ¶¶ 8-9.

TD Ameritrade has an office in Jersey City, New Jersey, where Mr. Tomczyk's primary office is located, but as explained above, a large majority of those involved in decision-making regarding the conduct alleged in the Complaint are located in Nebraska, Texas, or Illinois. *See id.* ¶¶ 6-7.

### ARGUMENT

To evaluate a motion to transfer under Section 1404(a), courts apply a two-part test: (i) whether the action "might have been brought" in the transferee district, and if so, (ii) whether transfer would be in the interest of justice and for the convenience of the parties and witnesses. *See*, *e.g.*, *Jumara v. State Farm Ins. Co.* 55 F.3d 873, 879 (3d Cir. 1995) (citing 28 U.S.C. §

5

1404(a)).  The District Court may order an action to be transferred if the moving party shows by a preponderance of the evidence that the proposed alternate forum is both adequate and more convenient than the present forum.  *See*, *e.g.*, *ML Design Group, LLC v. Young Mfg. Co.*, No. 12-5882, 2013 WL 3049174, at **1-2 (D.N.J. June 17, 2013) (Shipp, J.) (citations omitted); *accord Bryan v. Bristol-Myers Squibb Co.*, No. 12-6584, 2013 WL 3288159, at *1 (D.N.J. June 28, 2013) (Shipp, J.).

Once a determination has been made that the transferee district is a proper venue, the Court has discretion to grant the transfer and, in doing so, it "must evaluate whether a venue transfer would further the goals of section 1404(a), which are to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]"  *ML Design Group*, 2013 WL 3049174, at *2 (internal quotation marks omitted) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  In making this determination, the District Court must consider whether "the balance of private and public factors weighs 'strongly' in favor of transfer."  *ML Design Group*, 2013 WL 3049174, at *1.  Private interest factors include:

> [1] the plaintiff's forum preference as manifested in the original choice . . . [2] the defendant's preference . . . [3] whether the claim arose elsewhere . . . [4] the convenience of the parties as indicated by their relative physical and financial condition . . . [5] the convenience of the witnesses–but only to the extent that the witnesses may actually be unavailable for trial in one of the fora . . . and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (citations omitted).  The public interest factors include:

> [1] the enforceability of the judgment . . . [2] practical considerations that could make the trial easy, expeditious, or inexpensive . . . [3] the relative administrative difficulty in the two fora resulting from court congestion . . . [4] the local interest in deciding local controversies at home . . . [5] the public policies of the fora . . . and [6]] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). "Evaluation of the public interest factors include consideration of 'the locus of the alleged culpable conduct . . . and the connection of the conduct to plaintiff's chosen forum.'" *Liggett Group Inc. v. R.J. Reynolds Tobacco, Co.*, 102 F. Supp. 2d 518, 534 (D.N.J. 2000) (citations omitted).

I.   **THIS CASE COULD HAVE BEEN BROUGHT IN NEBRASKA.**

This Action could have been brought in the District of Nebraska. It asserts claims under the Exchange Act, and venue is proper under Section 27 of the Exchange Act "where (1) the defendant is found or is an inhabitant or transacts business, or (2) any act or transaction constituting the violation occurred." *Medtox Scientific, Inc. v. Morgan Capital, LLC*, 258 F.3d 763, 769 (8th Cir. 2001) (citing 15 U.S.C. § 78aa). Additionally, under the general venue provision in 28 U.S.C. § 1391(b)(2), venue is proper in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Here, TD Ameritrade Holding and TD Ameritrade, Inc. are Nebraska-based companies that maintain their principal places of business in Omaha. *See* Compl. ¶¶ 17-18. Mr. Tomczyk, as the Chief Executive Officer of TD Ameritrade, periodically travels to TD Ameritrade's headquarters in Omaha for TD Ameritrade business purposes. *See* Davidson Decl. ¶ 6; *Medtox*, 258 F.3d at 769 (finding that defendants transacted business in district because they made phone calls, toured the company's facilities, and were board members of a company in the district). Moreover, a substantial part of the decisions regarding order routing and the receipt of order routing revenue (the purported improper conduct) occurred in Nebraska. *See* Davidson Decl. ¶ 7. Accordingly, pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391, venue would be proper in the District of Nebraska.

7

## II. THE PRIVATE AND PUBLIC INTEREST FACTORS STRONGLY FAVOR TRANSFERRING THIS CASE TO THE DISTRICT OF NEBRASKA.

Taken together, the private and public factors that this Court must consider in determining whether this case should be transferred to the District of Nebraska weigh strongly in favor of transfer.

### A. Practical Considerations – Avoidance of Duplicative Litigation.

"[T]he most important factor is the avoidance of duplicative litigation: Adjudicating almost identical issues in separate fora would waste judicial resources." *In re Amendt*, 169 Fed. App'x 93, 96 (3d Cir. Feb. 16, 2006); *accord Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent."). Indeed, "[t]he single most overriding practical consideration is that there are [four] similar cases pending in the [transferee District]. To the extent that having all [five] cases heard in one district would save time and expense of everyone involved, this factor weighs in favor of transfer." *Culp v. NFL Productions,* LLC, No. 13-7815, 2014 WL 4828189, at *7 (D.N.J. Sept. 29, 2014) (transferring case from New Jersey to Minnesota, where three similar cases were pending). Thus, where, as here, "related lawsuits exist, it is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D.N.J. 1993) (internal quotations and citations omitted). Moreover, given that the first of the five cases that were filed concerning this subject matter was filed in Nebraska, "the court which first has possession of the subject matter must decide it." *Culp*, 2014 WL 4828189, at *3 (quoting *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988)); *see also Jermax, Inc. v. AK Steel Corp.*, No. 09-cv-4438, 2010 WL 2652276, at *6 (D.N.J. June 24, 2010)

8

("For purposes of the first-filed rule, the significant date to consider is the day when the original suit was initially filed, whether that be in a federal court or a state court."); *but see Ricoh* 817 F. Supp. at 487 (transferring action notwithstanding first-to-file principle where factors weighed in favor of doing so).

The four Nebraska Actions involve substantially the same parties as this Action, *i.e.*, TD Ameritrade, Inc., TD Ameritrade Holding Corporation, and Fredric Tomczyk, and substantially overlapping putative classes of TD Ameritrade customers. Moreover, all of the Nebraska Actions concern the same nucleus of facts as this Action; two Nebraska Actions (*Verdieck* and *Lerner*) include breach of fiduciary duty claims (*see* Compl. ¶ 2), which is a primary focus of this Action; and one Nebraska action (*Sarbacker*) includes claims of fraud, similar to the Section 10(b) claim of this Action (*see id.* ¶¶ 81-88). *See also* Robinson Decl. Ex. B, *Verdieck* Compl. ¶¶ 64-76; *id.* at Ex. C, *Lerner* Compl. ¶¶ 46-50; *id.* at Ex. D, *Sarbacker* Compl. ¶¶ 90-95. Given that the allegations and claims at issue here are very similar to those asserted in the Nebraska Actions, there is a substantial risk of inconsistent judgments in the event this Action is not transferred. *Compare*, *e.g.*, Compl. ¶ 96 (alleging breach of fiduciary duty for "routing orders to maximize liquidity rebates and payment for order flow, thereby failing to provide best execution"), *with* Robinson Decl. Ex. B, *Verdieck* Compl. ¶ 71 ("Defendant breached its fiduciary duty of best execution to Plaintiff and the Class by routing all [non-marketable limit orders] to Direct Edge for the purpose of obtaining maker rebates at the expense of Class member trades.").

In addition, transferring this Action to the District of Nebraska would undoubtedly promote judicial efficiency. The five actions may be consolidated, thereby avoiding duplicative discovery and eliminating unnecessary expense. As the court in *Ricoh* aptly wrote:

> Transfer in such a circumstance has numerous benefits. Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results.

817 F. Supp. at 487 (ordering transfer). These considerations apply equally here.

For all of these reasons, this factor strongly weighs in favor of transfer to Nebraska.

### B. Convenience of the Parties.

Transfer to Nebraska would be plainly more convenient for Defendants. Transferring this Action to Nebraska would reduce the already significant burden on TD Ameritrade given that TD Ameritrade is litigating the four Nebraska Actions that concern the same core set of facts that are at issue in this Action. In other words, as this Court held in *ML Design Group*, "transfer would substantially reduce the Defendants' burden to transfer documents and staff pertaining to a much larger operation." 2013 WL 3049174, at *4. Likewise, the majority of the most relevant witnesses are located in Omaha, Chicago, or Fort Worth. *See* Davidson Decl. ¶ 7. Fort Worth and Chicago are much closer to Omaha than they are to New Jersey. *See* Robinson Decl. Ex. E (reflecting that Chicago is 471 miles from Omaha and 780 miles from Trenton; Fort Worth is 652 miles from Omaha and 1,537 miles from Trenton).[2]

Any inconvenience to Plaintiff is not heavily weighted, given that this Action is a putative nationwide class action. *See*, *e.g.*, *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228, 231 (D.N.J. 1996) (collecting cases, and transferring securities class action); *see also Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("where there are hundreds of potential plaintiffs, . . . the claim of any one plaintiff that a forum is appropriate merely because it

---

[2] Even where one defendant is located in New Jersey, courts have ordered transfer under Section 1404. *See Yang v. Odom*, 409 F. Supp. 2d 599, 607 (D.N.J. 2006) (ordering transfer where one defendant was a New Jersey resident).

10

is his home forum is considerably weakened"). Moreover, Plaintiff is not likely to be inconvenienced in any event because "the participation of the class representative is generally minimal." *Job Haines*, 936 F. Supp. at 231; *accord id.* at 228, 230 (citation omitted).

The "convenience of counsel is not treated as an important factor in transfer motions." *Todd Shipyards Corp. v. Cunard Line Ltd.*, 708 F. Supp. 1440, 1450 (D.N.J. 1989). Nonetheless, transfer will not burden Plaintiff's lead law firm, Levi & Korsinsky LLP. *See* http://www.zlk.com, last visited Nov. 4, 2014 (representing that it prosecutes "high-stakes securities and class action lawsuits throughout the country").

C. **Convenience of Witnesses.**

"Transfer is favored where the most pertinent witnesses will be found in the transferee district." *Mancini v. Benihana*, No. 13-03167, 2013 WL 6147808, *3 (D.N.J. Nov. 22, 2013) (citing *Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir. 1981)). To make this determination, "[c]ourts assess not only the location and number of witnesses, but also the nature and importance of their testimony." *Mancini*, 2013 WL 6147808, at **3-4 (transferring action where majority of nonparty witnesses with the most probative knowledge were located in transferee district) (citation omitted). Here, a majority of the most relevant witnesses currently employed by TD Ameritrade are based outside of New Jersey—either in Nebraska or closer to Nebraska. *See* Davidson Decl. ¶ 7.

Further, with respect to nonparty witnesses, a District Court can only compel the appearance of witnesses who reside either in the district in which the court sits or within 100 miles of the place of trial. Fed. R. Civ. P. 45(c)(1)(A). Thus, if this case is tried, any former employees of TD Ameritrade can be compelled to testify at trial only if they reside within 100 miles of the courthouse at which the trial is held. *Id.* The unavailability of such witnesses would be minimized (or perhaps even obviated) if this case is transferred to the District of Nebraska,

where it is far more likely that former employees of TD Ameritrade reside. *See*, *e.g.*, *Mancini*, 2013 WL 6147808, at *3 (citing to defendant's former employees as possible witnesses and ordering transfer of case).[3] Accordingly, this factor favors transfer to Nebraska.

### D. Plaintiff's Choice of Forum.

Although a plaintiff's choice of forum will be entitled to substantial deference in an individual action, *see*, *e.g.*, *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 338 (D.N.J. 2003), "the weight of authority holds that in class actions . . . the class representative's choice of forum is entitled to lessened deference." *Job Haines*, 936 F. Supp. at 228 (collecting cases); *accord Yang*, 409 F. Supp. 2d at 606.

Furthermore, a plaintiff's choice of forum is entitled to even less consideration when, as here, the operative facts underlying the cause of action did not occur or occurred in small part within the forum chosen by the plaintiff. *See*, *e.g.*, *Culp*, 2014 WL 4828189, at *4 (less deference to plaintiff's preference "where the choice of forum has little connection with the operative facts") (citation omitted); *Santi v. Nat'l Business Records Mgmt.*, 722 F. Supp. 2d 602, 609 (D.N.J. 2010) (transferring action to Pennsylvania, where conduct occurred). Here, the operative facts concern TD Ameritrade's order routing processes and the receipt of payment for order flow or liquidity rebates (Compl. ¶¶ 7-10), and the related decisions for the most part took place in Nebraska, Illinois or Texas. *See* Davidson Decl. ¶ 7. Likewise, contrary to Plaintiff's bald allegation that "[m]any of the acts alleged [in the Complaint], including the dissemination to the investing public of the misleading statements and omissions at issue, occurred in substantial part in this District" (Compl. ¶ 14), the TD Ameritrade 10-K and SEC Rule 606 Reports identified in the Complaint

---

[3] For example, the Complaint includes allegations concerning a former TD Ameritrade employee (Compl. ¶ 44) who, on information and belief, resides in Nebraska. *See* Robinson Decl. Ex. F.

12

(*id.* ¶¶ 34, 43, 47) were prepared primarily in Nebraska and electronically disseminated from either Omaha or Fort Worth. *See* Davidson Decl. ¶¶ 8-9; *see also Job Haines*, 936 F. Supp. at 230 ("arguments that the false statements were directed to New Jersey does not make New Jersey a forum which has a significant connection with the operative facts").

  E. **Nebraska Has a Stronger Connection To the Alleged Conduct and a Greater Interest in the Litigation.**

  Nebraska has a much greater interest in this litigation than New Jersey. Indeed, TD Ameritrade's principal place of business is in Omaha. Compl. ¶¶ 17-18; Davidson Decl. ¶ 5. As discussed *supra*, most of the decision-making and implementation of TD Ameritrade's order routing occurs in Omaha or in locations closer to Nebraska than to New Jersey. Furthermore, the TD Ameritrade 10-K and SEC Rule 606 Reports identified in the Complaint were prepared primarily in Nebraska and electronically disseminated from Omaha or Fort Worth. *See* Davidson Decl. ¶¶ 8-9; *see also Job Haines*, 936 F. Supp. at 230 (New Jersey "has no more connection with the transactions and conduct underlying the case than any other venue to which the material was directed."). "Because a substantial amount of the alleged culpable conduct occurred in [the transferee District], not New Jersey, [the transferee District] has a stronger public interest in adjudicating this dispute." *Liggett Group*, 102 F. Supp. 2d at 536 (collecting cases and transferring action from New Jersey to North Carolina); *accord, e.g., ML Design Group*, 2013 WL 3049174, at *4 ("'Significant connections between a particular venue and the events that gave rise to a suit . . . should be weighed in the venue's favor.'").

  F. **The District of Nebraska's Docket is Much Less Congested Than the District of New Jersey's Docket.**

  The docket of the District of Nebraska is substantially less congested than the docket of the District of New Jersey, as demonstrated by the following statistics:

13

|  | D. New Jersey | | | D. Nebraska | | |
|---|---|---|---|---|---|---|
| Year | Total Pending Civil Cases | Number of Article III Judges | Pending Civil Cases Per Judge* | Total Pending Civil Cases | Number of Article III Judges | Pending Civil Cases Per Judge* |
| 2013 | 8095 | 17 | 476 | 560 | 3 | 187 |
| 2012 | 7143 | 17 | 420 | 580 | 3 | 193 |
| 2011 | 6445 | 17 | 379 | 544 | 3 | 181 |

* Rounded to the closest whole number.

See Robinson Decl. Exs. G-L. Accordingly, this factor favors transfer to Nebraska.[4]

## CONCLUSION

For the foregoing reasons, this Court should transfer this action to the United States District Court for the District of Nebraska.

ROBINSON, WETTRE & MILLER LLC

By: s/ Donald A. Robinson

Donald A. Robinson
Leda Dunn Wettre
One Newark Center, 19th Floor
Newark, NJ 07102
973-690-5400
drobinson@rwmlegal.com
lwettre@rwmlegal.com

---

[4] It bears mentioning that the remaining factors are neutral. The location of documents is of relatively less importance because virtually all are stored electronically. There is no difference between a judgment entered in Nebraska and one entered in New Jersey. Likewise, "[t]here is no evidence before this Court indicating that the majority of the plaintiffs are New Jersey residents such that New Jersey law would mainly apply." *Job Haines*, 936 F. Supp. at 233 (rejecting plaintiff's choice of law argument because "whatever district court hears this case is going to have to make a choice of law determination regarding what state's law is appropriate relative to the state law causes of action").

14

*Of Counsel:*

A. Robert Pietrzak (admitted *pro hac vice*)
Alex J. Kaplan (admitted *pro hac vice*)
Jackie A. Lu (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

*Attorneys for Defendants TD Ameritrade Holding Corporation, TD Ameritrade, Inc., and Fredric Tomczyk*